MR. JUSTICE DALY
delivered the opinion of the Court.
Plaintiff-appellant Sharon Mackin brought this tort action against the State in the Lewis and Clark County District Court on behalf of her minor son Michael Timmer. The trial court granted defendant’s motion for partial summary judgment based upon section 2-9-104, MCA, dealing with sovereign immunity. The plaintiff appeals.
Michael Timmer, plaintiff’s 12-year-old son and some friends were playing in an open field at Fort Harrison near Helena, Montana, on August 15, 1978. The field was used as a small arms firing range by the Montana National Guard. While playing there, Michael allegedly picked up a practice grenade which had failed to explode when fired from a 40 millimeter grenade launcher. The grenade later exploded, injuring Michael’s feet with shrapnel, burns and impaction of powder.
A tort complaint was filed by Sharon Mackin on behalf of her son against the State of Montana on February 27, 1979. The plaintiff’s amended statement of the claim specifies the following
damages:
1. Special Damages
Shodair Hospital...........................$ 725.75
Helena Radiological Assoc.................... 47.00
Dale Johnson, M.D.......................... 89.00
Children’s Clinic........................... 104.00
Estimated future med. expenses................ 1,000-00
$ 1,965.75
2. Loss of earning capacity.....................$ 5,000.00
3. General damage — pain & suffering and disfigurement.............................$93,000.00
The State pleaded several affirmative defenses. Its fourth affirm *366 ative defense asserts that section 2-9-104, MCA, precludes recovery of noneconomic damages under the sovereign immunity doctrine. Under this affirmative defense, it was alleged that the claimed “general damages” ($93,000 under the amended claim) constitute noneconomic damages since no permanent disabling injuries resulted from the accident.
The plaintiff moved for summary judgment on the issue of sovereign immunity on the grounds that section 2-9-104, MCA, is unconstitutional and that the State has waived its right to assert the defense. The State then moved for partial summary judgment with regard to plaintiff’s claim for pain and suffering and disfigurement, contending that section 2-9-104, MCA, bars recovery.
We set forth here in full, the provisions of section 2-9-104, MCA:
“Limitation on governmental liability for damages in tort — petition for relief in excess of limits. (1) Neither the state, a county, municipality, taxing district, nor any other political subdivision of the state is liable in tort action for:
“(a) noneconomic damages; or
“(b) economic damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $300,000 for each claimant and $1 million for each occurrence.
“(2) The legislature or the governing body of a county, municipality, taxing district, or other political subdivision of the state may, in its sole discretion, authorize payments for noneconomic damages or economic damages in excess of the sum authorized in subsection (1)(b) of this section, or both, upon petition of plaintiff following a final judgment. No insurer is liable for such noneconomic damages or excess economic damages unless such insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of the limitation stated in this section or specifically agrees to provide coverage for noneconomic damages, in which case the insurer may not claim the benefits of the limitation specifically waived.” (Emphasis added.)
*367 For the purposes of section 2-9-104, noneconomic damages and economic damages are defined in section 2-9-101(2), MCA.
Plaintiff argued at the District Court hearing that the statute is unconstitutional under 1972 Mont.Const., Art. II, § 18, as amended by the voters in 1974, and which now provides:
“State subject to suit. The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a % vote of each house of the legislature.”
The District Court filed a memorandum opinion and order on December 31, 1979. The order denied plaintiff’s motion for summary judgment and granted the State’s motion for partial summary judgment on plaintiff’s claim for damages. The District Court also directed the entry of a final judgment in favor of the State against all claims for “noneconomic” damages. The court found that there were no just reasons for delay and certified its reasons therefore pursuant to Rule 54(b), M.R.Civ.P. As a result, the order is appealable within Rule 1, M.R.App.Civ.P., although the judgment encompasses fewer than all the claims.
The plaintiff raises issues on appeal that section 2-9-104, MCA, is unconstitutional, that it is an invalid attempt to reinstate immunity, and that the State, by the adoption of section 2-9-201 et seq., MCA, providing for self insurance, is precluded from raising the defense of sovereign immunity. The State responds that the provisions of the 1972 Mont.Const., Art. II, § 18, as amended, do not restrict the legislature from imposing such conditions or limitations as are set out in section 2-9-104(1).
We do not reach the constitutional or other contentions raised by the parties in this case. It is clear from the provisions of section 2-9-104(2), that the entry in this case of a summary judgment against the plaintiff on certain of her claimed damages was premature. An analysis of the statute and its background is necessary in order to explain our reasons.
In 1972, the members of the Montana Constitutional Convention adopted Art. II, § 18, which abolished governmental immunity *368 from suit for injury to a person or property without qualification. That section of Art. II was amended by the voters in the general election of 1974 by adding to the provision “except as may be specifically provided by law by a % vote of each house of the legislature.”
We note parenthetically that the proper term to describe the immunity now provided in 1972 Mont.Const., Art. II, § 18, as amended, is “governmental immunity.” Since the constitutional provision extends to “counties, cities, towns, and all other local governmental entities”, it is improper to describe their immunity as “sovereign.” Only the state has “sovereign immunity”, which is as old as the common law, and thought to be inherent in the nature of sovereignty. See Nevada v. Hall (1979), 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416, reh. den. 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389. Governmental, or municipal immunity, derives from Russell v. The Men of Devon (1788), 2 Term. Rep. 667, 100 Eng. Rep. 359, and is therefore based on court-made law. See Worthing ton v. State (Wyo. 1979), 598 P.2d 796. It is tobe noted with approval that section 2-9-104, the section with which we are concerned here, speaks of “limitation on governmental liability” with no reference to the term “sovereign immunity.”
However, the reference in the caption of section 2-9-104, “limitation on governmental liability” sets the stage for our discussion here. When the provisions of section 2-9-104, are read in juxtaposition to the provisions of 1972 Mont.Const., Art. II, § 18 (as amended), this question is immediately raised: Did the legislature in adopting section 2-9-104 reinstate a limited governmental immunity, or did it merely limit the remedy recoverable against a governmental unit?
The District Court recognized the nuance contained in that question. In determining that section 2-9-104 was constitutionally amendable under 1972 Mont.Const., Art. II, § 18 (as amended), the District Court said this:
“. . . I can only conclude that the legislature subsequently has the same power and authority to reinstate immunity with whatever *369 terms and conditions regarding the amount and types of damages that it had when it waived the State’s immunity by legislation prior to 1973. The power to limit liability is the same, whether it is exercised by waiving or reinstating the State’s immunities. Indeed, there is no valid distinction between the limited waiver of immunity up to the limits of liability insurance, which was the law in Montana for many years, and the imposition of statutory damage limits pursuant to Article II, section 18, as amended. The fundamental authority of the legislature is identical in each instance and only the amounts are different.
“Therefore, I conclude that the limitations on the amount and types of damages awardable against the State in accordance with sections 2-9-101 and 2-9-104, MCA, constitute a valid, constitutional reinstatement of governmental immunity within the meaning of Article II, section 18, Montana Constitution, as amended.”
Accepting arguendo the District Court’s conclusion that the legislature could either reinstate total governmental immunity, or provide limited immunity against certain types of damages (whether called waiver of reinstatement), we come to the next question that logically follows from the District Court’s determination: Did the District Court properly grant summary judgment against all but plaintiff’s claimed economic damages in the light of the provisions of section 2-9-104, MCA?
We call attention now, to the language in section 2-9-104(2), MCA, to the effect that a governmental unit, in its sole discretion, may authorize payments for noneconomic damages or economic damages in excess of $300,000, or both, upon “petition of plaintiff following a final judgment”. We find it plainly the legislative scheme under section 2-9-104(2), that a tort claim against a governing body of this state may proceed to final judgment on all claims for damages which the plaintiff may have, both for noneconomic and economic damages. After “final judgment” under section 2-9-104(2), the plaintiff may petition the governmental body for noneconomic damages, or for economic damages in excess of $300,000.
*370 Our duty in interpreting a statute is to give effect to the objects of the statute, to construe it so as to promote justice, and to give such construction to the statute as will preserve the constitutional rights of the parties. Yurkovich v. Industrial Accident Board (1957), 132 Mont. 77, 314 P.2d 866. Neither statutory nor constitutional construction by us should lead to absurd results if reasonable construction will avoid it. State v. School District No. 1 of Fergus County (1960), 136 Mont. 453, 348 P.2d 797, 78 A.L.R.2d 1012. Governmental units in Montana are not immune from suits for torts. Section 2-9-102, MCA. Section 2-9-104 does not make a governmental unit of the State of Montana immune from suit. Rather, it limits the governmental liability to economic damages not in excess of $300,000. It then goes one step further and provides that other damages, or economic damages in excess of $300,000, may be sought by petition from the governmental entity and by its grace, upon “petition of plaintiff following a final judgment.” In order to petition the governmental unit for the exercise of its grace, there must be a “plaintiff” and there must be a “final judgment.” It may be argued that the plaintiff here has a final judgment against her for noneconomic damages, but that argument begs the question. Section 2-9-104, interpreted as we see it, provides a method for a plaintiff to obtain a determination in a judicial setting of damages beyond economic damages in the amount of $300,000 after which petition to the governmental body can be made. Unless a plaintiff is allowed to proceed to final judgment on all claimed damages, where a governmental entity is a defendant, the legislative purpose as set out in section 2-9-104(2), MCA, would be frustrated.
Where the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing for a court to construe. Clark v. Hensel Phelps Const. Co. (1977), 172 Mont. 8, 560 P.2d 515; Security Bank and Trust Company v. Connors (1976), 170 Mont. 59, 550 P.2d 1313.
The prosecution of a tort claim against a governmental entity, or a defense of the same, under this interpretation of section 2-9-104, *371 will present no real problem or difficulty to reasonably adept counsel. In this case, in fact, the complaint was amended to set forth specifically the economic and noneconomic damages. By the use of special interrogatories, the jury will be instructed, if it finds for the plaintiff, to determine both economic and noneconomic damages. When these are entered in a final judgment, the amount of “governmental liability” can be determined. The amounts if any, in excess of the governmental liability, under section 2-9-104, can be pursued at plaintiff’s pleasure following a final judgment.
We see no waste of judicial resources in so providing. Certainly the determination of damages in a judicial setting far outweighs the determination of an award by a governmental entity bound by no rules and bare of precedent.
There are other reasons which lead us to interpret the statute as we do. We can envision any number of situations in which the economic damages might exceed $300,000. If we were to affirm the District Court, how in a proper case would the excess of economic damages over $300,000 be determined? Undoubtedly, an affirmance of the District Court would result in the refusal of any evidence of damages beyond that figure in future cases.
Another situation that we can envision is one where a governmental entity is sued as a joint tortfeasor with one or more defendants which are not governmental entities. In determining comparative negligence in such a situation, it will be far easier for the District Court to allow evidence of all damages of whatver kind or nature, and if the verdict should require it, thereafter to apply the limitations of governmental liability found in section 2-9-104, MCA. It is instructive to remember that:
“It is well established that by consenting to be sued the state does nothing more than waive its immunity from action. It does not thereby concede its liability in favor of the claimant or create a cause of action in his favor which did not theretofore exist. Thus, liability of the state for tort cannot be predicated upon the fact that the state has entered its general statutory consent to be sued, directing the manner in which suits may be brought by those having *372 claims against the state. Neither does a special statute permitting suits on particular claims concede the justice of the claims. Statutory consent to be sued merely gives a remedy to enforce a liability and submits the state to the jurisdiction of the court, subject to its right to interpose any lawful defense.” 57 Am.Jur.2d 81, Municipal Etc. Tort Liability, § 72.
And again:
“Consent of the state to be sued upon claims against it by private persons is generally given expressly by statutory enactment directing in what manner and in what court such suits may be brought; the general purpose and effect of such statutes, as commonly understood, is to refer to the judiciary the settlement of the questions of law and fact involved in the claims, and the determination, in the form of a judgment, of the rights of the parties . . .” 72 Am.Jur.2d 511, States Etc., § 120.
We determine therefore, that the effect of section 2-9-104, MCA, is to limit the remedy available against the state or governmental entity after its liability has been determined by final judgment, except such further payment as the governmental entity may by grace provide. Therefore the summary judgment of the District Court against types of damages not authorized in section 2-9-104, MCA, prior to final judgment is premature. This does not mean that the District Court would not have power to grant a summary judgment where a governmental entity is a defendant on issues not encompassed in section 2-9-104, MCA.
We therefore do not reach the constitutional or other issues raised by the parties in this case as they are not properly before us at this time.
Reversed and remanded with directions to set aside the summary judgment in favor of the State. The denial of summary judgment in favor of the plaintiff is affirmed without prejudice.
MR. JUSTICES HARRISON, SHEA and SHEEHY concur.