Justice Jim Rice delivered the Opinion of the Court.
*1069 ¶ 1 Jamie Cramer (Cramer) appeals the entry of summary judgment in her declaratory action regarding underinsured motorist coverage (UIM) in favor of Defendant Farmers Insurance Exchange (Farmers), by the Fourth Judicial District Court, Missoula County. We reverse in part, affirm in part, and remand for further proceedings, addressing the following issues:
1. Did the District Court err by holding Farmers could offset its UIM obligation to Cramer dollar-for-dollar with GEICO's entire UIM payment?
2. Did the District Court err by holding the non-duplication clause in Farmers' policy is unambiguous and does not violate the reasonable expectations doctrine?
3. Is Cramer entitled to attorney fees?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 Cramer was one of five passengers in a vehicle hit by an at-fault vehicle. Cramer stipulated that the total personal damages she sustained in that accident was $75,686.81. She was apportioned $27,000 of the tortfeasor's liability coverage limits for her bodily injury claims, as other passengers also sustained injuries, and thus the tortfeasor was underinsured by $48,686.81 as to Cramer's damages.
¶ 3 The vehicle in which Cramer was a passenger was insured by GEICO. GEICO paid Cramer its individual UIM coverage limit of $25,000. Cramer carried personal vehicle coverage with Farmers, including medical payment (MedPay) coverage with a $100,000 limit, and UIM coverage with a $50,000 individual limit. Farmers paid Cramer $21,186.81 under her MedPay coverage. Thus, from these sources, Cramer received payments of $73,186.81, or $2,500 less than her total stipulated damages.
¶ 4 Cramer made a claim under her UIM coverage with Farmers, and two disputes arose that led Cramer to file this declaratory action. First, the parties disagreed regarding how much of the $25,000 GEICO UIM payment Farmers could offset against its own UIM obligation to Cramer. Farmers' UIM coverage in Cramer's policy contained the following provisions:
We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an UNDERinsured motor vehicle because of bodily injury sustained by the insured person .
...
2. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by the amount of any other bodily injury coverage available to any party held to be liable for the accident .
3. If any other collectible insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.
(Emphasis in original.) Likewise, the GEICO policy had a similar "other insurance" provision governing its UIM obligation:
If the insured has other insurance against a loss covered by the Uninsured Motorist provisions [including UIM coverage] of this policy, we will not be liable for more than our pro-rata share of the total coverage available.
(Emphasis in original.) Thus, under the "pro rata " or "proportional" UIM obligations in both policies, GEICO's $25,000 limit and Farmer's $50,000 limit made GEICO responsible for a one-third share, and Farmers responsible for a two-thirds share, of the damages sustained by Cramer beyond the tortfeasor's payment. GEICO was thus obligated *1070 to pay $16,228.94, and Farmers was obligated to pay $32,457.87, of Cramer's $48,686.81 UIM claim. However, for whatever reason, GEICO paid Cramer $25,000, or about $9,000 more than its pro rata share of Cramer's UIM damages.
¶ 5 Cramer asserted that, despite GEICO's excess payment, she was nonetheless entitled to collect the full two-thirds pro rata share of her UIM damages from Farmers, or $32,457.87. Farmers contended it was entitled to offset the entire GEICO payment, even though it exceeded GEICO's UIM pro rata responsibility, entitling Cramer to only $23,686.81 from Farmers. On this issue, the District Court determined that, under Cramer's theory, she would recover more than her stipulated damages, which the court reasoned was "neither fair nor equitable and is not permitted under Montana law."
¶ 6 Secondly, the parties disputed whether Farmers could offset its MedPay payments against its UIM obligation to Cramer. A policy section entitled, "Conditions," located at the end of Cramer's policy and applicable to all coverages, included the following non-duplication provision:
9. No Duplication of Benefits
Any amount paid under Coverage E-Medical Expense Coverage, will be applied against any other coverage of this policy applicable to the loss so that there is no duplication of Coverage E benefits. In no event shall a coverage limit be reduced below any amount required by law.
(Emphasis in original.) This provision was further identified on page one of the policy, within the index, as "No Duplication of Benefits."
¶ 7 Cramer asserted the non-duplication provision was ambiguous and placed in an obscure location in the policy, thus violating the reasonable expectations doctrine, prohibiting Farmers from offsetting its MedPay payments, and entitling her to the full two-thirds pro rata UIM share from Farmers, or $32,457.87. Farmers contended that the provision was neither ambiguous nor obscurely placed, but validly operated to offset Farmers' $21,186.81 in MedPay payments against its UIM obligation to Cramer. The District Court determined the non-duplication provision to be "valid, enforceable and not contrary to Montana public policy." Holding in Farmers' favor on the two contested issues, the court entered summary judgment in favor of Farmers and ordered Farmers to pay the amount of $2,500 in UIM benefits to Cramer. Cramer appeals.
STANDARD OF REVIEW
¶ 8 We review a district court's grant of summary judgment de novo , using the same M. R. Civ. P. 56 criteria applied by the district court. Winter v. State Farm Mut. Auto. Ins. Co. , 2014 MT 168, ¶ 9, 375 Mont. 351, 328 P.3d 665 (citations omitted). A moving party is entitled to summary judgment when the party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. Winter , ¶ 9 (citations omitted). Here, there are no disputes of fact; only the interpretation of an insurance policy is presented for review. The interpretation of an insurance contract is a question of law, which we review to determine if the district court's conclusions are correct. Winter , ¶ 9 (citations omitted).
DISCUSSION
¶ 9 1. Did the District Court err by holding Farmers could offset its UIM obligation to Cramer dollar-for-dollar with GEICO's entire UIM payment?
¶ 10 Cramer argues the District Court misapplied the pro rata policy language by permitting Farmers to offset the entire GEICO UIM payment, dollar-for-dollar from Farmers' UIM obligation. She contends that, applying the policy as written, she is entitled to the two-thirds pro rata payment and that no exclusion in the policy permits Farmers to offset the entire GEICO payment.
¶ 11 The District Court reasoned that "[t]he purpose of UIM coverage is to make sure that a person injured in an automobile accident receives, as near as possible, full compensation for their damages when the tortfeasor fails to carry sufficient liability limits[,]" concluding that "[t]he insured plaintiff *1071 is not entitled to recover more than the amount of his or her uncompensated damages." Similarly, Farmers argues Cramer's position "is contrary to the intent and purpose of UIM coverage," because it would "provide a windfall or allow a double recovery." Notably, however, Farmers cites no language in its policy that prohibits such a double payment.
¶ 12 "[A]n insurer's liability for underinsured motorist benefits in any given case arises from the terms of the insurance contract...." Mecca v. Farmers Ins. Exch. , 2005 MT 260, ¶ 14, 329 Mont. 73, 122 P.3d 1190 (citations omitted). In Winter , we noted that Montana law authorizes insurers to add exclusions to their polices to "prevent duplicate payments for the same element of loss," Winter , ¶ 21 (quoting § 33-23-203(2), MCA ), but held there was "no basis in contract law, insurance law, or public policy for a blanket rule prohibiting duplicate insurance coverage when the parties have not expressly agreed to such a limitation and the insured has paid for the coverage." Winter , ¶ 26. Exclusions or limitations that prevent double recovery "must be clear and unequivocal; otherwise, the policy will be strictly construed in favor of the insured." Winter , ¶ 13 (quoting Christensen v. Mountain W. Farm Bureau Mut. Ins. Co. , 2000 MT 378, ¶ 27, 303 Mont. 493, 22 P.3d 624 ). Thus, the question here is whether clear and unambiguous policy language permits Farmers to offset its UIM obligation dollar-for-dollar with the entire GEICO UIM payment.
¶ 13 "We accord the usual meaning of the terms and the words in an insurance contract, and we construe them using common sense." Meadow Brook, LLP v. First Am. Title Ins. Co. , 2014 MT 190, ¶ 14, 375 Mont. 509, 329 P.3d 608 (citations omitted). We read an insurance policy as a whole, and if possible, will reconcile its various parts to give each meaning and effect. Farmers All. Mut. Ins. Co. v. Holeman , 1998 MT 155, ¶ 25, 289 Mont. 312, 961 P.2d 114 (citations omitted). Ambiguities in an insurance contract are construed against the insurer. Holeman , ¶ 25 (citations omitted).
¶ 14 As quoted above, the UIM provision in Cramer's policy provides that Farmers "will pay all sums which an insured person is legally entitled to recover as damages" from the tortfeasor. Cramer and Farmers have stipulated Cramer's damages to be $75,686.81. Then, the policy permits Farmers to reduce its UIM obligation "by the amount of any other bodily injury coverage available to any party held to be liable for the accident." Consequently, the $27,000 payment to Cramer from the tortfeasor's liability insurance is deducted, leaving $48,686.81 in damages.[1]
¶ 15 Lastly, the policy provides, "[i]f any other collectible insurance applies to a loss covered by this part, we will pay only our share," and defines Farmers' share as "the proportion that our limits of liability bear to the total of all applicable limits," which is here a two-thirds pro rata share. As noted above, Farmers' two-thirds share of Cramer's damages is $32,457.87. Farmers points to no clear and unambiguous policy language authorizing a further offset to its UIM obligation by the amount GEICO paid in excess of GEICO's one-third pro rata share, which would reduce Farmer's UIM obligation to less than its two-thirds share. Policy limitations that prevent double payments "must be clear and unequivocal; otherwise, the policy will be strictly construed in favor of the insured." Winter , ¶ 13 (citation omitted). While Farmers argues generally that its policy prohibits duplication of payments, the non-duplication provision in Farmers' policy expressly mentions and prevents duplication only of "Coverage E," the MedPay coverage, which is discussed below, and is not the issue here. Farmers is not entitled under these provisions to a dollar-for-dollar offset of the excess portion (more than one-third pro rata share) of the GEICO UIM payment, and must pay its contractual two-thirds pro rata share of Cramer's damages. There are no provisions that credit Farmers' UIM obligation for an overpayment by another insurer.[2]
*1072 ¶ 16 We conclude the District Court erred in applying a complete dollar-for-dollar offset instead of the pro rata offset provided by Cramer's policy.[3] We thus reverse on this issue, holding that Farmers is not entitled to offset its UIM obligation to Cramer by the excess amount paid by GEICO. We next consider the parties' dispute over the offset for Farmers' MedPay payments.
¶ 17 2. Did the District Court err by holding the non-duplication clause in Farmers' policy is unambiguous and does not violate the reasonable expectations doctrine?
¶ 18 Cramer argues that offsetting MedPay payments against Farmers' UIM obligation violates the reasonable expectations doctrine, because the non-duplication provision is ambiguous and placed obscurely within the policy, and that the District Court erred in its contrary conclusions.
¶ 19 "The reasonable expectations doctrine provides that the objectively reasonable expectations of insurance purchasers regarding the terms of their policies should be honored notwithstanding the fact that a painstaking study of the policy would have negated those expectations." Winter , ¶ 19 (citations omitted). The doctrine protects insurance consumers from confusing or unclear contract language based on the recognition that most insurance contracts are contracts of adhesion. Winter , ¶ 19 (citations omitted). The doctrine of reasonable expectations does not apply to create coverage where the terms of the insurance policy "clearly and unequivocally" demonstrate an intent to exclude such coverage. Winter , ¶ 19 (citations omitted).
¶ 20 We have recognized that the inappropriate placement of a coverage exclusion within a policy could violate the reasonable expectations of an insured. In Jacobson v. Implement Dealers Mut. Ins. Co. , 196 Mont. 542, 549, 640 P.2d 908, 912 (1982), we held a statutorily required waiver of uninsured motorist coverage was invalid because it was "lost in the myriad of verbiage that makes up the insurance contract," and "would be unnoticeable by the average policyholder...." Likewise, federal courts have applied our reasonable expectations analysis to determine the propriety of the location of a non-duplication provision within a policy. See Shook v. State Farm Mut. Ins. Co. , 872 F.Supp. 768, 776 (D. Mont. 1994) (finding an exclusion of considerable magnitude violated the reasonable expectations doctrine because it was obscurely located within the policy); Farmers All. Mut. Ins. Co. v. Miller , 869 F.2d 509, 511 (9th Cir. 1989) (upholding an offset clause because it was "in a logical position within the uninsured motorist endorsement, which in turn occupies a logical position within the policy as a whole.").
¶ 21 Cramer argues that the policy's non-duplication provision was obscurely placed, as it is not referenced in either the MedPay or UIM coverage sections of the policy and is found several pages away from both sections, thus violating the reasonable expectations doctrine. However, the provision is clearly identified in the index on page one of the policy, entitled "No Duplication of Benefits," is found within a policy section entitled "Conditions," and is identified with its own bold header. It was not "lost in the myriad of verbiage." Jacobson , 196 Mont. at 549, 640 P.2d at 912. Placement was not obscure because the provision prevents duplication of MedPay benefits against all coverages in the policy and, thus, was logically placed in the "Conditions" section relevant to all coverages. Under Cramer's argument, Farmers may *1073 have been required to repeat the provision in every coverage section of the policy.
¶ 22 Cramer offers that the non-duplication provision reduces her coverage from the amounts listed on her declarations page because the offset decreases the amount of available UIM coverage, thus violating her reasonable expectations. However, in a more serious damage scenario, Farmers would potentially be obligated to pay the $100,000 MedPay limits and the $50,000 UIM limits for the claim, despite the non-duplication provision, and thus, the coverage is not "defeated." See Newbury v. State Farm Fire & Cas. Ins. Co. , 2008 MT 156, ¶ 31, 343 Mont. 279, 184 P.3d 1021. This provision simply prevents a second payment on damages for which Farmers has made MedPay payments. Such non-duplication provisions are authorized by Montana law. See Winter , ¶ 21 (quoting § 33-23-203(2), MCA ). Consequently, we conclude the non-duplication provision does not violate the reasonable expectations of an insured, but "clearly and unequivocally" prohibits payment of both MedPay benefits and UIM benefits for the same damage.
¶ 23 Cramer argues the non-duplication provision is ambiguous because it does not specially mention the UIM coverage it offsets. An "ambiguity exists only when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations." Holeman , ¶ 25 (citations omitted). The question of ambiguity is examined "from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business." Holeman , ¶ 25 (citations omitted). We are unpersuaded by this argument, because the provision clearly and unequivocally provides there will be no duplication of MedPay benefits and "any other coverage of this policy[.]" This provision is not reasonably subject to two interpretations.
¶ 24 We affirm the District Court's determination to offset Farmers' UIM obligation to Cramer by its MedPay payments to her. Farmers is entitled to offset its $32,457.87 UIM obligation, established above, with its $21,186.81 in MedPay payments. Farmers is therefore obligated to pay Cramer the amount of $11,271.06 under her UIM coverage.
¶ 25 3. Is Cramer is entitled to attorney fees?
¶ 26 Finally, Cramer argues she is entitled to attorney fees under the insurance exception to the American rule if she prevails on appeal. Farmers answers that Cramer is not entitled to any fees unless she prevails on every claim she made in the entire lawsuit, and that because Cramer previously conceded an issue, she could never be entitled to fees.
¶ 27 "[A]n insured is entitled to recover attorney fees, pursuant to the insurance exception to the American Rule, when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract[.]" Mt. W. Farm Bureau Mut. Ins. Co. v. Brewer , 2003 MT 98, ¶ 36, 315 Mont. 231, 69 P.3d 652. Because Cramer was forced to bring this action to obtain the full benefit of her insurance contract, she is entitled to recover attorney fees. Farmer's argument that a party must prevail on all claims to be awarded fees is unavailing and the cases it cites do not support that position.
¶ 28 However, a district court may award only reasonable fees, and actions by the plaintiff, such as unreasonably multiplying the litigation, may be considered. Mlekush v. Farmers Ins. Exch. , 2017 MT 256, ¶ 22, 389 Mont. 99, 404 P.3d 704. Further, Cramer did not prevail on all her claims, and thus reasonable fees may not include efforts undertaken to pursue positions on which she did not ultimately prevail. We remand the case for a determination of reasonable fees by the District Court.
¶ 29 Reversed in part, affirmed in part, and remanded for further proceedings consistent herewith.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.

There is no assertion in the litigation that any other party was "liable for the accident."

The Farmers' UIM coverage stated the following cap on payment limits:
a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the lesser of:
1. The difference between the amount paid in damages to the insured person by and for any person or organization who may be legally liable for the bodily injury , and the limit of UNDERinsured Motorist Coverage; or
2. The amount of damages established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury .
No argument is made under this provision. (Emphasis added.)

GEICO is not a party to this action and no party has raised the issue of potential subrogation or contribution claims between GEICO and Farmers. See Winter , ¶ 20 n.2.