DA 21-0321

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 137

DON DANIELS, as conservator of the
Estate of SARAH DANIELS,

　　　　Plaintiff and Appellee,

　　v.

GALLATIN COUNTY, RICK BLACKWOOD,
and JOHN DOES I-V,

　　　　Defendants,

and

ONE BEACON INSURANCE GROUP, LLC, d/b/a
ATLANTIC SPECIALTY INSURANCE COMPANY,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the Eighteenth Judicial District,
　　　　　　　　In and For the County of Gallatin, Cause No. DV 18-17B
　　　　　　　　Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Peter F. Habein (argued), Dale Schowengerdt, Justin Harkins, Crowley
　　　　　　Fleck PLLP, Billings, Montana

　　　　For Appellee:

　　　　　　Martha Sheehy (argued), Sheehy Law Firm, Billings, Montana

　　　　　　Jonathan Cok, Travis Kinzler, Cok & Kinzler PLLP, Bozeman, Montana

　　　　　　　　　　　　　　Argued and Submitted: March 3, 2022

　　　　　　　　　　　　　　　　　　Decided: July 12, 2022

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Atlantic Specialty Insurance Company (ASIC) appeals from the September 22, 2020 Memorandum and Order issued by the Eighteenth Judicial District Court, Gallatin County, determining ASIC may not claim the benefit of the $750,000 statutory cap set forth in § 2-9-108, MCA.  In a bench trial following the court's ruling, ASIC's insured Gallatin County (the County) was found liable for over $12 million in damages to Sarah Daniels, who was injured when a county-owned snowplow ran a stop sign and collided with her vehicle.  We restate the issue on appeal:

> *Whether the District Court erred in determining ASIC may not claim the benefit of the statutory cap set forth in § 2-9-108, MCA, but must provide coverage to the limits stated in the County's insurance policy with ASIC.*

¶2     We affirm the District Court.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On January 12, 2017, Sarah Daniels sustained severe injuries when a snowplow operated by County employee Rick Blackwood ran a stop sign and collided with her vehicle.  The County admitted its liability for Blackwood's act, as Blackwood was negligent and acting within the scope of his employment.  The County also admitted Sarah Daniels suffered permanent and life-altering injuries and her damages exceeded $750,000.

¶4     At the time of the crash, ASIC provided insurance coverage to the County pursuant to Policy Number 791000853-0001 (the Policy), with a policy period from July 1, 2016, to July 1, 2017.  ASIC does not dispute the Policy provides coverage for the snowplow and the occurrence in question.  The Policy's stated limits, in relevant part, are $1.5 million in

3

business auto coverage and $5 million in excess coverage. The Policy contains no mention of the statutory cap found in § 2-9-108, MCA. Following the crash, ASIC paid Don Daniels as the conservator of his daughter Sarah Daniels (Daniels) $750,000, the limit of the County's liability under § 2-9-108(1), MCA.

¶5 Daniels filed suit against Blackwood, the County, and ASIC alleging three counts: (1) declaratory relief against ASIC regarding insurance coverage available to indemnify the County for Daniels's claims; (2) negligence against the County; and (3) an alternative claim challenging the constitutionality of § 2-9-108, MCA, as applied.

¶6 ASIC initially moved to dismiss Daniels's declaratory claim; the District Court denied the motion. ASIC and Daniels then filed cross-motions for summary judgment. The District Court granted Daniels's motion and denied ASIC's, declaring the statutory cap found in § 2-9-108(1), MCA, did not apply and the Policy's stated limits of $1.5 million in business auto coverage and $5 million in excess coverage were available to indemnify the County for Daniels's claims. The District Court started its analysis with the Montana Insurance Code codified in Title 33, MCA. Section 33-15-302, MCA, requires an insurance contract to contain all the policy's terms, conditions, and limitations. The District Court explained the Policy contains no reference to a limit of $750,000, no reference to § 2-9-108, MCA, and no reference to statutory caps. The court concluded incorporating the statutory cap, as ASIC advocated, violates the requirement of § 33-15-302, MCA, for an insurance contract to contain all the policy's terms, conditions, and limitations. Additionally, the District Court concluded the scope of coverage provision ASIC relies on does not limit recovery under the Policy to $750,000 because under that

4

provision ASIC must pay the amounts the County legally must pay as damages, and judgment could be entered against the County in excess of $750,000. Finally, the District Court concluded ASIC specifically agreed to provide coverage in excess of the statutory limits, as required by § 2-9-108(3), MCA, by providing the County with coverage in excess of the statutory cap for the type of personal injuries at issue in this case, without reference to the statutory cap.

¶7 The court dismissed Daniels's as-applied constitutional challenge in a separate order. After a bench trial on the negligence count against the County, the court determined Blackwood caused $12,410,016.11 in damages to Sarah Daniels. The court entered judgment against the County for $11,660,016.11, accounting for the $750,000 already paid to Daniels. ASIC now appeals the District Court's order declaring that the statutory cap found in § 2-9-108(1), MCA, does not apply.[1]

## STANDARD OF REVIEW

¶8 We review a district court's grant of summary judgment de novo, applying the criteria of M. R. Civ. P. 56. *Cramer v. Farmers Ins. Exch.*, 2018 MT 198, ¶ 8, 392 Mont. 329, 423 P.3d 1067. Summary judgment is appropriate where the movant establishes the absence of genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c). Interpretation of an insurance contract presents a question of law, which we review for correctness. *Cramer*, ¶ 8.

---

[1] Appeals from the negligence claim and constitutional claim were resolved through mediation and are not at issue in this appeal.

## DISCUSSION

¶9 *Whether the District Court erred in determining ASIC may not claim the benefit of the statutory cap set forth in § 2-9-108, MCA, but must provide coverage to the limits stated in the County's insurance policy with ASIC.*

¶10 There is no dispute ASIC provided business auto coverage and excess coverage to the County at the time of the crash that caused Sarah Daniels's injuries and that her damages are covered under the Policy. There is also no dispute the Policy provided limits of $1.5 million in auto coverage and $5 million in excess coverage. The dispute arises over whether Daniels is limited to recovering $750,000 or whether the full limits of the Policy are available. ASIC first argues its coverage is coextensive with the County's liability as the Policy provides ASIC will pay only what the County "legally must pay as damages." ASIC argues § 2-9-108(1), MCA, is not a contract term that needed to be included in the Policy, but rather a limitation on the County's legal liability. Under ASIC's theory, the statute limits the amount the County "legally must pay" to $750,000, thus it also limits coverage under the Policy.[2]

¶11 ASIC argues it is entitled to the benefit of the statutory cap because it did not waive it under § 2-9-108(3), MCA, the section that governs how an insurer may claim the benefits of the limitation provided under § 2-9-108(1), MCA. The District Court determined ASIC waived the liability cap by writing and providing a policy to the County with coverage

---

[2] This Court has addressed the question of when insurance coverage waives governmental immunity. *See, e.g., Crowell v. School Dist. No. 7*, 247 Mont. 38, 48-52, 805 P.2d 522, 528-30 (1991) (providing a brief history of governmental immunity and insurance coverage in Montana), *superseded by statute*, § 2-9-111, MCA (1991), *as recognized in Koch v. Billings Sch. Dist. No. 2*, 253 Mont. 261, 271, 833 P.2d 181, 187 (1992). Here, however, this question is answered by statute.

limits in excess of the statutory cap. ASIC argues nothing in the policy specifically waived the statutory liability cap and an insurance policy silent on the statutory cap cannot waive the cap. Rather, ASIC posits the statute requires an insurer to agree specifically to waive the statutory cap in a separate endorsement attached to the Policy and specify whether it is waiving the limitation in § 2-9-108(1) or (2), MCA. ASIC argues the only purpose of § 2-9-108(3), MCA, is to allow insurers to write policies with limits exceeding the cap without automatically waiving those caps.

¶12     When interpreting statutes, our role is to "ascertain and carry out the Legislature's intent." *Mont. Fish Wildlife & Parks v. Trap Free Mont. Pub. Lands*, 2018 MT 120, ¶ 14, 391 Mont. 328, 417 P.3d 1100 (quotation omitted). We first determine intent from the plain language of the statute. *Mont. Fish Wildlife & Parks*, ¶ 14. We interpret the statute as a whole, without isolating specific terms from the context in which they are used. *Mont. Fish Wildlife & Parks*, ¶ 14. When considering the plain language used, we "ascertain and declare what is in terms or in substance contained therein" and do not "insert what has been omitted" or "omit what has been inserted." Section 1-2-101, MCA.

¶13     Section 2-9-108, MCA, states in relevant part:

> (1) The state, a county, municipality, taxing district, or any other political subdivision of the state is not liable in tort action for damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $750,000 for each claim and $1.5 million for each occurrence.

>                    .     .     .

> (3) An insurer is not liable for excess damages unless the insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of a limitation stated in

this section, in which case the insurer may not claim the benefits of the limitation specifically waived.

¶14 From the plain language of the statute, it is clear § 2-9-108(1), MCA, shields the County from liability over $750,000, but it does not necessarily shield the County's insurer when subsection (3) is invoked. An insurer who waives the statutory cap "may not claim the benefits of the limitation specifically waived." The insurer waives the benefits of the limitation by "specifically agree[ing] by written endorsement to provide coverage to the governmental agency involved in amounts in excess of a limitation stated in this section." Section 2-9-208(3), MCA. ASIC agreed to provide auto coverage to the County with a limit of $1.5 million and excess coverage with a limit of $5 million—amounts in excess of a limitation stated in the section.

¶15 ASIC argues a policy that is silent on the statutory cap in § 2-9-108(1), MCA, cannot waive that cap under § 2-9-108(3), MCA. But whether the statute is specifically referenced is not dispositive. Rather, the decision relies on whether ASIC specifically agreed to provide coverage in amounts in excess of the limitation stated in the section. We look to the language of the Policy to determine the intent of the contracting parties in entering the contract.

¶16 "General rules of contract law apply to insurance policies and we construe them strictly against the insurer and in favor of the insured." *Mecca v. Farmers Ins. Exch.*, 2005 MT 260, ¶ 9, 329 Mont. 73, 122 P.3d 1190 (quoting *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469). When interpreting an insurance policy, we read the policy as a whole and, if possible, we reconcile

8

its various parts to give each one meaning and effect. *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶ 19, 343 Mont. 279, 184 P.3d 1021. Any doubts as to coverage are to be resolved in favor of extending coverage. *Steadele v. Colony Ins. Co.*, 2011 MT 208, ¶ 19, 361 Mont. 459, 260 P.3d 145. If the language of the policy is clear and explicit, the court may not rewrite the contract but must enforce it as written. *See Am. States. Ins. Co. v. Flathead Janitorial & Rug Servs., Inc.*, 2015 MT 239, ¶ 12, 380 Mont. 308, 355 P.3d 735.

¶17     In the Common Policy Declarations, ASIC asserted: "In return for the payment of the premium, and subject to all terms of this policy, we agree with you to provide the insurance as stated in this policy." The Business Auto Coverage Form provides ASIC "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" This section limits the policy coverage to the amount shown in the Declarations. The Declarations contain a policy limit of $1.5 million per claim. In addition, the Excess Liability Coverage Form provides ASIC "will pay those sums that the insured becomes legally obligated to pay as 'damages' in excess of all 'underlying insurance,' but only after all 'underlying insurance' has been exhausted by the actual payment of the Limits of Liability of the 'underlying insurance.'" As shown in the Declarations, the excess coverage limit is $5 million per claim. ASIC agreed to sell this Policy with full knowledge of the laws in Montana that limit certain liabilities. *See Mont. Auto Fin. Corp. v. British & Fed. Underwriters*, 72 Mont. 69, 75, 232 P. 198, 200 (1924) ("The policies are prepared by skilled lawyers retained by the insurance

companies, who through years of study and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself."). Knowing this, ASIC did not exclude coverage over $750,000 for the type of injuries covered by § 2-9-108(1), MCA, but agreed "to provide the insurance as stated in this policy" in excess of the statutory cap. *See* § 33-15-302, MCA ("The policy, when issued, shall contain the entire contract between the parties, and neither the insurer or any insurance producer or representative thereof nor any person insured thereunder shall make any agreement as to the insurance which is not plainly expressed in the policy.); *State Farm Mut. Auto. Ins. Co. v. Queen*, 212 Mont. 62, 65, 685 P.2d 935, 937 (1984) ("The insurer is responsible for the language which the policy contains.").

¶18     The Dissent argues the language of the Policy only provides coverage up to the limitations on liability in § 2-9-108(1), MCA, because the Policy provides ASIC will pay only what the County "legally must pay as damages" under the business auto coverage or is "legally obligated to pay" under the excess policy coverage. This argument fails for two reasons. First, our case law makes clear a statutory limitation on liability submits a local governmental entity to the jurisdiction of the courts, where the full damages caused by a governmental entity's tortious conduct may be determined. *See Mackin v. State*, 190 Mont. 363, 372, 621 P.2d 477, 483 (1980). In interpreting a predecessor statute to the current § 2-9-108, MCA, this Court explained the effect of a statute limiting governmental liability limited the remedy available against the state or governmental entity "after its liability has been determined by final judgment." *Mackin*, 190 Mont. at 372, 621 P.2d at 483. The

10

right to recover on that judgment from the local governmental entity itself is then subject to the statutory limitation. *See Mackin*, 190 Mont. at 371-72, 621 P.2d at 482 (quoting 57 Am Jur. 2d 81, *Municipal Etc. Tort Liability*, § 7i and 72 Am. Jur. 2d 511, *States Etc.*, § 120). Under our holding in *Mackin,* the District Court had jurisdiction over the County to determine the full measure of damages caused by the County's negligence. That judgment is a legal obligation to pay or in other words what the County "legally must pay as damages" or is "legally obligated to pay" even if the County may enjoy the benefits of the limitation in § 2-9-108(1), MCA, if it had to pay for the damages from the public fisc. Section 2-9-108(1), MCA, limits possible recovery from the County but not necessarily its insurer unless § 2-9-108(3), MCA, applies. Second and as noted by the District Court, it is undisputed the Policy provides coverage for the auto in question and the occurrence itself. The scope of coverage provision defines the scope of the Policy's coverage and has no language limiting the amount of coverage provided under the Policy. ASIC's corporate representative conceded coverage provisions "typically are not drafted to incorporate specific statutory limitations" and when ASIC has specifically limited coverage to a statutory cap in other states, ASIC has done so by amending the provision pertaining to the limits of liability, not the scope-of-coverage provision.

¶19 ASIC's argument any waiver must be in a separately attached document modifying the policy has no statutory support but relies on a narrow technical definition of

"endorsement" from a treatise.[3]  Nothing in § 2-9-108(3), MCA, indicates the Legislature intended such a narrow reading.  Clearly, the intent of the legislation is to mandate that the parties specifically provide in writing an agreement to extend coverage above the $750,000 and $1.5 million limit to governmental damages provided in § 2-9-108(1), MCA.  What's more, the Policy itself uses the term "endorsement" more broadly than advocated by ASIC or the Dissent.  The Policy is organized into a series of schedules under which different forms are attached that provide the terms of the various coverages under the Policy.  Schedule 5 provides the forms applicable to the County's auto coverage.  Schedule 5 itself is listed as an "endorsement" on the Business Auto Declarations page.  The insurance broker Tyler Delaney and ASIC's underwriter Frank Rios both described Schedule 5 as an endorsement.  Additionally, the County's conduct reveals it believed the Policy provided $1.5 million in auto coverage and $5 million in excess coverage as the County provided certificates of insurance to community groups assuring them it was covered by the Policy with limits of $1.5 million in auto coverage and $5 million in excess coverage.  Reading an artificially narrow definition of "written endorsement" into the statute as the Dissent suggests frustrates the clear intent of the contracting parties and ignores our precedent requiring courts to read an insurance policy as a whole and resolve any doubts in favor of coverage.  *See R.S. v. United Servs. Auto. Ass'n*, 2022 MT 68, ¶ 16, 408 Mont. 195, 507 P.3d 565; *Steadele*, ¶ 19.

---

[3] ASIC quotes from *Couch on Insurance* to define "endorsement" as a "written modification of the coverage of an insurance policy, usually liability or property policy."  *See* 1 Steven Plitt et al., *Couch on Insurance* § 1:3 (3d ed. 1995).

¶20 Section 2-9-108(3), MCA, specifies how an insurer may claim the benefit of a limitation on governmental liability. The insurer is not liable for excess damages unless the insurer specifically agrees in writing to amounts in excess of the limitation provided by statute. ASIC agreed to provide the insurance as stated in the Policy. The Policy provided coverage limits in amounts in excess of $750,000 and $1.5 million, with no reservation of any statutory cap. ASIC now may not claim the benefits of the limitation specifically waived.

**CONCLUSION**

¶21 The District Court is affirmed.[4]

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON

Justice Jim Rice, dissenting.

¶22 I disagree with the Court's conclusion that simply because it insured the County for liability in amounts greater than the statutory limits found in § 2-9-108(1), MCA, ASIC therefore also implicitly agreed to provide coverage in amounts greater than $750,000 and

---

[4] Justice Ingrid Gustafson has recused herself from participation in this Opinion. The Court waives application of Section VII, Paragraph 4 of the Internal Operating Rules of this Court and this matter has been decided by a six-justice panel.

13

$1.5 million pursuant to § 2-9-108(3), MCA. In my view, the Court conflates a policy's grant of coverage with concepts regarding liability, the result of which is the Court effectively imposing direct liability onto ASIC in contravention of the insurance policy's clear language. I also disagree with the Court's interpretation of the word "endorsement" in § 2-9-108(3), MCA, as effectively meaning any part of the written policy. I therefore dissent.

¶23 This Court reads insurance policies as a whole, and if possible tries to reconcile a policy's various parts to give each meaning and effect. *Rolan v. New W. Health Servs.*, 2022 MT 1, ¶ 30, 407 Mont. 34, 504 P.3d 464 (citation omitted). If a policy's language is clear and explicit we will not rewrite it. *Lincoln Cty. Port Auth. v. Allianz Glob. Risks US Ins. Co.*, 2013 MT 365, ¶ 15, 373 Mont. 60, 315 P.3d 934 (citation omitted).

¶24 When interpreting statutes, the Court's goal is to "'ascertain and carry out the Legislature's intent.'" *Mont. Fish, Wildlife & Parks*, ¶ 14 (quoting *In re Marriage of Rudolf*, 2007 MT 178, ¶ 41, 338 Mont. 226, 164 P.3d 907). In determining intent, we look to the plain language of the statute as enacted. *Mont. Fish Wildlife & Parks*, ¶ 14 (citations omitted). "If the statutory language is clear and unambiguous, the statute speaks for itself and there is nothing left for the Court to construe." *Mont. Fish Wildlife & Parks*, ¶ 14 (quoting *Mont. Contractors' Ass'n v. Dep't of Highways*, 220 Mont. 392, 394, 715 P.2d 1056, 1058 (1986) (internal quotation marks omitted). When interpreting a statute, this Court does not "insert what has been omitted" or "omit what has been inserted" into the statute's language. Section 1-2-101, MCA.

¶25  The Policy states that ASIC "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'"  The Court represents this section as "stat[ing] the limits [of] policy coverage to the amount shown in the Declarations."  This is an incorrect statement of the Policy's terms and of general insurance contract language.  The amounts shown on the Declarations page are not the "policy coverage."  "Coverage" in an insurance policy is the scope of risks that trigger an insurer's duty to defend and indemnify.  *See Insurance Coverage, Bouvier Law Dictionary* (Desk Edition, 2012), (defined as "[t]he specific or general risks or contingencies that give rise to claims under an insurance policy . . . [t]he extent of coverage is the extent of the risk assumed by the insurer . . . the whole set of possible claims that may be honored.").  The extent of coverage in the Business Auto section of ASIC's policy is limited to "damages" from "bodily injury" or "property damage" related to an "accident" involving a "covered auto."  Likewise, the extent of coverage in the Excess Liability section only extends to "those sums that the insured becomes legally obligated to pay as 'damages' in excess of all 'underlying insurance,' but only after all 'underlying insurance' has been exhausted by the *actual payment* of the Limits of Liability of the 'underlying insurance.'"  (Emphasis added.)

¶26  Here, it is undisputed that the County can only *actually pay* $750,000 per claim or $1.5 million per occurrence pursuant to its Business Auto policy section.  ASIC's Business Auto coverage extends only to "bodily injury" or "property damage" caused by an "accident" arising from the use of a "covered auto"—i.e. torts, as contemplated by

15

§ 2-9-108(1), MCA. ASIC's contractual liability—the amount ASIC has a legal obligation to defend and indemnify the County for should coverage exit—on the other hand, only extends to "all sums an 'insured' legally must pay as damages" and "those sums that the 'insured' becomes legally obligate to pay" for the Business Auto and Excess Liability sections, respectively. Thus, despite obtaining excess liability coverage in an amount greater than the $750,000 per claim and $1.5 million per occurrence ASIC's liability to the County for tort claims is contractually co-extensive with the amounts found in § 2-9-108(1), MCA.[1]

¶27 Of course, pursuant to § 2-9-108(3), MCA, an insurer and government entity can contract to provide greater amounts of coverage. The Court misconstrues, however, § 2-9-108(3), MCA's plain language. The subsection states that: "An insurer is not liable for excess damages unless the insurer specifically agrees by written endorsement to provide coverage to the governmental agency involved in amounts in excess of a limitation stated in this section, in which case the insurer may not claim the benefits of the limitation specifically waived." Section 2-9-108(3), MCA. Despite the subsection's precise language calling for a "specific[] . . . written endorsement" extending coverage in "excess of a limitation stated in this section" the Court effectively concludes that this language is

---

[1] This raises the question of what point the Excess Liability coverage serves. As ASIC points out in its briefing, the policy purchased by the County covers much more than the tort liability referenced in § 2-9-108, MCA, including coverage for potential civil rights violations and damage to properties owned by the County. And the Business Auto section provides underinsured motorist coverage, which, given the likely high cost of some county vehicles and the relatively low mandatory insurance limits in Montana, could require excess liability coverage in the case of some accidents.

met when an insurer simply agrees in the policy to provide coverage in greater amounts than found in § 2-9-108(1), MCA. The Court summarily concludes that "ASIC's argument any waiver must be in a separately attached document modifying the policy has no statutory support but relies on a narrow technical definition of 'endorsement' from a treatise.[] Nothing in § 2-9-108(3), MCA indicates the Legislature intended such a narrow reading."[2] On the contrary, the very fact that, *in a statute regarding insurance and insurers*, the Legislature chose to use the word "endorsement" signifies it intended the term's technical meaning be used when applying the statute. *See* § 1-2-106, MCA ("Words and phrases used in the statutes of Montana are construed according to the context and the approved usage of the language . . . technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law . . . are to be construed according to such peculiar and appropriate meaning or definition.").

¶28 The definitions in the Dissent's Footnote 2 clearly establish that, in the insurance context, an "endorsement" is a separate amendment or rider which modifies the initial grant of coverage or liability. Montana's insurance statutes also establish this, an insurance "Policy" is statutorily defined as "the written contract of or written agreement for or effecting insurance, by whatever name called, and includes all clauses, riders, endorsements, and papers attached thereto and a part thereof." Section 33-15-102(1),

---

[2] ASIC quoted from *Couch on Insurance* to define "endorsement" as "a written modification of the coverage of an insurance policy, usually liability or property policy." *See* 1 Steven Plitt et al., *Couch on Insurance*, § 1:3 (3d ed. 1995). This is by no means a "narrow" definition; indeed, it is apparently more expansive than many other legal definitions of "endorsement." *See Endorsement, Black's Law Dictionary*, (11th ed. 2019) "An amendment to an insurance policy; a rider."

17

MCA. And an insurance contract "shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy." Section 33-15-316, MCA. Clearly, both generally and as characterized in Montana's statutes, an "endorsement" to an insurance contract, while undisputedly part of the Policy as a whole, is a separate attachment modifying the original grant of coverage.

¶29 Besides erasing the Legislature's "endorsement" requirement from § 2-9-108(3), MCA, the Court's analysis here misreads "specifically," "coverage," and "in excess of a limitation stated in this section" to conclude that "[t]he insurer is not liable for excess damages unless the insurer specifically agrees in writing to amounts in excess of the limitation provided by the statute." That, however, is not what § 2-9-108(3), MCA provides. First, the Court's interpretation renders the statutory language of "specifically" superfluous. *See Mont. Trout Unlimited v. Mont. Dep't of Nat. Res. & Conservation*, 2006 MT 72, ¶ 23, 331 Mont. 483, 133 P.3d 224 (citing *Mattson v. Montana Power Co.*, 2002 MT 113, ¶ 10, 309 Mont. 506, 48 P.3d 34) ("We must endeavor to avoid a statutory construction that renders any section of the statute superfluous or fails to give effect to all of the words used."). Next, the Court re-writes the statute to provide "in excess of *the* limitation provided by the statute" when it actually reads "in excess of *a* limitation stated in this section." Section 2-9-108(3), MCA (emphasis added). Critically, there is more than one "limitation" mentioned in § 2-9-108, MCA, as a whole. Section 2-9-108(1), MCA itself contains two limitations—a per-claim limitation and a per-occurrence limitation. The Court's analysis also completely ignores § 2-9-108(2), MCA. While that sub-section's

18

provisions are not relevant to the facts of this case, they are relevant for purposes of statutory interpretation, as this Court interprets statutes "as a whole." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (citation omitted).

¶30     Section 2-9-108(2), MCA's first sentence reads:

> The state, a county, municipality, taxing district, or any other political subdivision of the state is not liable in tort action for damages suffered as a result of negligence of an officer, agent, or employee of that entity by a person while the person was confined in or was otherwise in or on the premises of a correctional or detention institution or facility to serve a sentence imposed upon conviction of a criminal offense.

This is, like § 2-9-108(1), MCA, a limitation on the government's liability in tort damages, except this sub-section provides that the government entity is not liable for *any* damages, rather than subsection (1)'s liability limits of $750,000 and $1.5 million. Section 2-9-108(2), MCA's, next two sentences create yet another limitation:

> The immunity granted by this subsection does not extend to serious bodily injury or death resulting from negligence or to damages resulting from medical malpractice, gross negligence, willful or wanton misconduct, or an intentional tort. This subsection does not create an exception from the dollar limitations provided for in subsection (1).

These sentences, when read together, provide that for medical malpractice, gross negligence, willful or wanton misconduct, or intentional torts suffered by an incarcerated person, the government entity is liable up to the limits mentioned in subsection (1). These provisions therefore create even more limits on government liability that could potentially be affected by subsection (3).

¶31     Thus, the necessity of the word "specific" in § 2-9-108(3), MCA, becomes apparent—there are a multitude of limitations found in § 2-9-108, MCA, as a whole, not

19

the single limitation the Court's opinion supposes, and a waiver of one limitation is not to be construed as a waiver of all limitations. Likewise, the necessity of waiving limitations by an actual written endorsement, not merely providing greater limits of liability, is readily apparent. A government entity insures itself from more diverse losses than just tort damages, and the tort-limitations found in § 2-9-108(1) and (2), MCA, are clearly meant to apply to insurers as well. *See* § 2-9-108(3), MCA ("in which case the insurer may not claim the benefits of the limitation specifically waived," clearly indicating that the limitations are meant to benefit the insurer as well as the insured government entity.). A written endorsement ensures that both parties are clear that the insurance coverage is meant to provide limits of liability beyond the certain specific limitations, and that the insurer can therefore appropriately measure the risks and costs of providing such coverage—which may be vastly different depending on which specific limitation is waived.

¶32 In short, when read as a whole and when each word is given its proper meaning, the intent of § 2-9-108(3), MCA, is meant to ensure that government entities, or courts, do not assume an insurer implicitly agrees to coverage in excess of § 2-9-108, MCA's limitations absent a written endorsement indicating a specific intent to do so. In other words, the subsection's very purpose is to prevent the result the Court reaches today. I would conclude that absent a policy endorsement indicating the County's coverage extends beyond specific limitations found in § 2-9-108, MCA, ASIC is not liable for damages beyond what the County must actually pay pursuant to the statute.

/S/ JIM RICE

20